**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| IN RE:<br>    BACK9NETWORK, INC. and<br>    SWING BY SWING GOLF, INC.<br>    Debtors.<br><br>    (Employer IDs #-3858 and #-4455) | CHAPTER 11<br><br>Jointly Administered under<br>CASE NO. 15-22192 (AMN) |
| IN RE:<br>    BACK9NETWORK, INC., et al.<br><br>    Movants<br><br>V.<br><br>    THE STATE OF CONNECTICUT<br>    DEPARTMENT OF ECONOMIC<br>    AND COMMUNITY DEVELOPMENT<br>    AND GOLFWORKS LLC<br><br>    Respondents | RE: ECF No. 3 |

**INTERIM ORDER GRANTING DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, and 364 AND BANKRUPTCY RULES 4001 AND 9014 FOR FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING, GRANTING PRIMING LIENS AND SUPER-PRIORITY CLAIMS, MODIFYING THE AUTOMATIC STAY, AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Back9Network, Inc. ("Back9") and Swing by Swing Golf, Inc. ("Swing by Swing" and together with Back9, the "Debtors")[1] pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code for this interim order (the "Order") and a final order (the "Final Order")): (i) authorizing the Debtors to obtain a post-petition loan (the "DIP Loan") from GolfWorks LLC (the "DIP Lender"); (ii) authorizing the Debtors to borrow funds in accordance with the Loan Agreement; (iii) granting the DIP Lender a post-petition super priority administrative expense claim and first priority security

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

interest in all of the Debtors' assets (excluding Avoidance Actions) as security for the Debtors' obligations under the DIP Loan; (iv) lifting the automatic stay to allow the DIP Lender to record and perfect its liens under the DIP Loan Documents; (v) authorizing the Debtors to use cash collateral and provide a replacement lien to the State of Connecticut Department of Economic and Community Development ("DECD"); and (vi) granting related relief; and the matter having appeared before this Court on a duly noticed hearing on January 4, 2016 ( the "Hearing").

And this Court having considered the Motion, the exhibits attached thereto (as amended as stated on the record at the Hearing), the DIP Loan Documents, and the evidence submitted and the arguments of counsel made at the Hearing, and notice of the Hearing having been given in accordance with the Bankruptcy Rules, and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved, or overruled by this Court, and for good and sufficient cause appearing therefor:

**BASED ON THE RECORD OF THE HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  On December 23, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized to continue in possession of their properties and operate and manage their businesses as debtors-in-possession. No trustee or examiner has been appointed in these proceedings.

B.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334 over these proceedings and over the persons and property affected hereby (the "Case"). Venue for the Case is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.  No official committee of unsecured creditors (the "Committee") has been appointed in the Case.

D.     The Debtors stipulate, admit, and agree, without prejudice to the rights of other parties including the Committee, to the following:

1. On or about February 3, 2012, Back9 filed an application with DECD requesting financial loans and assistance for the start-up of Back9's television golf network. DECD approved Back9's application, and on May 11, 2012, Back9 and DECD entered into certain agreements (the "SBA Express Agreements") pursuant to which DECD agreed to extend a grant in an amount not to exceed $100,000 and a loan in an amount not to exceed $250,000 to Back9. Back9's obligations under the SBA Express Agreements were evidenced by a promissory note (the "$250,000 Note") in the principal amount of $250,000 dated May 11, 2012 and secured by a security agreement dated May 11, 2012. DECD's security interest was perfected by a UCC financing statement dated June 1, 2012 and recorded at UCC1 File Number 20122110346.

2. As of the Petition Date, the balance due to DECD under the $250,000 Note was $24,048.94.

3. On August 15, 2012, DECD agreed to extend additional financial assistance to Back9 in the form of a loan in an amount not to exceed $750,000 (the "Assistance Agreement"). Back9's obligations under the Assistance Agreement were evidenced by a promissory note in the amount of $750,000 (the "$750,000 Note") and secured by an intellectual property security agreement and a security agreement both dated August 15, 2012. DECD's security interest was perfected by a UCC financing statement dated August 22, 2012 and recorded at UCC1 File Number 20123243699.

4. On February 21, 2013, DECD and Back9 entered into an amendment to the Assistance Agreement, pursuant to which DECD agreed to extend an additional loan in the amount of $4,000,000 to assist Back9 with the second phase of Back9's business project (the "Amended Assistance Agreement"). Back9's additional obligations under the Amended Assistance Agreement were evidenced by a promissory note in the amount of $4,000,000 (the "$4,000,000 Note") and secured by an amended and restated security agreement and an amended and restated intellectual property agreement both dated February 21, 2013. DECD's security interest was perfected by the same UCC financing statement referenced in Paragraph 3, above.

5. As of the Petition Date, the balance due to DECD under the $750,000 Note was $750,000 and the balance due to DECD under the $4,000,000 Note was $4,000,000.

6. The Debtors acknowledge and agree that as of the Petition Date, the liens (the "DECD Liens") and obligations granted and owed to DECD with respect to the $250,000 Note, the $750,000 Note, and the $4,000,000 Note (collectively, the "DECD Notes") are valid, binding, enforceable, non-avoidable, and properly perfected and constitute legal, valid, binding, and non-avoidable obligations to DECD without defense or right of offset.

7. Substantially all of the Debtors' cash constitutes cash collateral of DECD (the ("Cash Collateral").

E.  The Debtors need to obtain interim post-petition financing pursuant to the DIP Loan and to use Cash Collateral in order to continue operations. The absence of a working capital disbursement of the DIP Loan and/or access to Cash Collateral on an interim basis would immediately and irreparably harm the Debtors, their estates, their creditors, and equity

security holders, and the potential for a successful reorganization. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business without immediate access to some portion of the DIP Loan proceeds and the authorized use of Cash Collateral on an interim basis.

F.    The Debtors are unable to obtain unsecured debt in the ordinary course of business that would be entitled to a priority administrative expense under Section 503(b)(1) of the Bankruptcy Code. It is in the best interests of the Debtors and all other parties in interest that the Debtors continue operations.  Good cause has been shown for entry of this Order, and the entry of this Order is in the best interests of the Debtors and all other parties in interest.  The terms of the DIP Loan are at least as favorable as those available to the Debtor from other sources.

G.    The priming of the DECD Liens pursuant to Section 364(d) of the Bankruptcy Code will enable the Debtors to obtain the DIP Loan and to continue operations. DECD has consented to such priming liens and is entitled to receive adequate protection as set forth in this Order.

H.    The DIP Lender has indicated a willingness to provide financing to the Debtors subject to (a) the entry of this Order; (b) approval of the terms and conditions of the DIP Loan Documents (as defined below); and (c) entry of findings by this Court that the DIP Lender will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Order.

I.    The terms and conditions of the DIP Loan, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The parties have represented

that the DIP Loan was negotiated in good faith and at arms' length between the Debtors and the DIP Lender. Use of the credit to be extended under the DIP Loan shall be deemed to have been so allowed, advanced, made, used, and extended in good faith and for valid business purposes and uses within the meaning of Section 364(e) of the Bankruptcy Code. Accordingly, the DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Order will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Order or any other order.

J.      The proceeds of the DIP Loan shall be used in a manner that is consistent with the Budget that is attached hereto as Exhibit A.

K.      Notice of this Motion has been given by electronic mail or first class United States Mail to the United States Trustee, counsel for the DIP Lender, counsel for DECD, and the twenty largest creditors. The Court finds that notice of the Motion and the Hearing, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Bankruptcy Rule 4001(c).

Based upon the foregoing findings and conclusions, the Motion, and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor

**IT IS HEREBY ORDERED that:**

1.      <u>DIP Loan Approved</u>. The Motion is granted as set forth herein. The Interim Financing (as defined below) and the use of Cash Collateral on an interim basis are authorized and approved, pending the entering of the Final Order by this Court and subject to the terms and conditions set forth in this Order.

2.      <u>Objections Overruled</u>. All objections to the DIP Loan and to the use of Cash

Collateral to the extent not withdrawn or resolved are hereby overruled.

3. <u>Approval of the DIP Loan Documents</u>. The amended loan documents submitted as exhibits at the Hearing (the "DIP Loan Documents") are hereby approved to the extent consistent with the record at the Hearing. The Debtors are expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Loan Documents and to incur and to perform the obligations imposed on them thereunder (the "<u>DIP Obligations</u>") in accordance with, and subject to, the terms of this Order and the DIP Loan Documents, and to deliver all instruments and documents that may be required or necessary for the performance by the Debtors under the DIP Loan and the creation and perfection of the DIP Liens described in and provided for by this Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtor, enforceable against the Debtors and their estates in accordance with their terms.

4. <u>Authorization to Borrow</u>. The Debtors are hereby authorized to request the disbursement of fifty thousand dollars ($50,000) in DIP Loan proceeds pending the entering, by this Court, of the Final Order (the "<u>Interim Financing</u>").

5. <u>DIP Obligations</u>. The DIP Loan Documents and this Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Case, or in any other proceeding superseding or related to any of the foregoing (collectively, "<u>Successor Case</u>").

6. <u>DIP Liens</u>. Effective immediately upon the execution of this Order, pursuant to Sections 361, 362, 364(c) and (d) of the Bankruptcy Code, the DIP Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly

perfected security interests in and liens (the "DIP Liens") on any and all presently owned and hereafter acquired personal property, real property, and other assets of the Debtors, both tangible and intangible, whether owned or consigned by or to, or leased from or to the Debtors but excluding any claim or cause of action ("Avoidance Actions") arising under Sections 544, 545, 547, 548, 549, and 553 of the Bankruptcy Code (collectively, the "DIP Collateral").

7. DIP Lien Priority. Subject to the Carve Out, the DIP Liens securing the DIP Obligations shall be senior in priority and superior to any security, mortgage, collateral interest, lien, or claim on or to any of the DIP Collateral including the DECD Liens. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Case. The DIP Liens shall be valid and enforceable and shall not be subject to avoidance, subordination, or other action or proceeding by any party in interest (notwithstanding any adverse claim(s) to the DIP Collateral). The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Case, upon the conversion of the Case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Case. No lien or interest avoided and preserved for the benefit of any estate pursuant to Section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

8. DIP Superpriority Claims. Upon entry of this Order, the DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Case (collectively, the "DIP Superpriority Claims") for all DIP Obligations. Subject to the Carve Out, the DIP Superpriority Claims shall (a) have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in the Case and any Successor Cases, at

any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, except as set forth herein, and (b) at all times be senior to the rights of the Debtors and their estates, any successor trustee or other estate representative to the extent permitted by law (including any adverse claims to the DIP Collateral or otherwise). The DIP Superpriority Claims shall not extend to any Avoidance Actions.

9. **No Obligation to Extend Credit**. The DIP Lender shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Loan Documents and this Order have been satisfied in full or waived by the DIP Lender in its sole discretion.

10. **Use of DIP Loan Proceeds**. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Loan only for the purposes specifically set forth in this Order, the DIP Loan Documents, and in compliance with the Budget.

11. **Intentionally Deleted.**

12. **Use of Cash Collateral**. Subject to the terms of this Order and in compliance with the Budget, the Debtors are authorized to use Cash Collateral pending entry of the Final Order. Pursuant to Sections 361, 362, and 363 of the Bankruptcy Code, as adequate protection, DECD is hereby granted a replacement lien (the "Replacement Lien") for any diminution in value of the Cash Collateral on any and all presently owned and hereafter acquired personal property, real property, and other assets of the Debtors, both tangible and intangible, whether owned or consigned by or to, or leased from or to the Debtors but

excluding any Avoidance Actions. The Replacement lien shall be subordinate to the DIP Liens.

13.  **Adequate Protection Liens for DECD**. Pursuant to Sections 361 and 364(d) of the Bankruptcy Code, and as adequate protection for the priming of the DECD Liens, DECD is hereby granted an adequate protection lien (the "Adequate Protection Lien") on any and all presently owned and hereafter acquired personal property, real property, and other assets of the Debtors, both tangible and intangible, whether owned or consigned by or to, or leased from or to the Debtors but excluding any Avoidance Actions but only to the extent of any diminution in value of any prior valid lien existing as of the petition date. The Adequate Protection Liens shall be subordinate to the DIP Liens.

14.  **Modification of Automatic Stay**. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, the Replacement Liens, the Adequate Protection Liens, and the DIP Superpriority Claims; (b) permit the Debtors to incur all liabilities and obligations under the DIP Loan Documents, the DIP Loan, and this Order; and (c) permit the Debtors to perform such other acts as are necessary to effectuate the terms of this Order.

15.  **Perfection of DIP Liens, Replacement Liens, and Adequate Protection Liens**. This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens, the Replacement Liens, and the Adequate Protection Liens (collectively, the "Post-Petition Liens") without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Post-Petition Liens to the priorities

granted herein. Notwithstanding the foregoing, the DIP Lender and DECD are authorized to file, as each deems necessary in its sole discretion, such financing statements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable Post-Petition Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the Post-Petition Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender and/or DECD all such financing statements, mortgages, notices and other documents as each may reasonably request. The DIP Lender and DECD may file a photocopy of this Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument.

16. <u>Proceeds of Subsequent DIP Loan</u>. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in this Case or any Successor Case, shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c) or 364(d) in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Loan, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied as set forth in the DIP Loan Documents.

17. <u>Intentionally Deleted.</u>

18. <u>Events of Default</u>. The occurrence of any "Event of Default" as defined in the DIP Loan Documents, (subject to any extensions or waivers as permitted under the DIP Loan

Documents) including, without limitation, an Event of Default resulting from the failure of the Debtors duly and punctually to observe, perform or discharge any obligation or duty imposed upon them by this Order or any of the DIP Loan Documents, the appointment of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code, the dismissal or conversion to Chapter 7 of the Case, the filing of a motion by the Debtors to convert the Case to a case under Chapter 7 of the Bankruptcy Code or to dismiss the Case, this Order is altered, amended, vacated, supplemented, modified, supplemented, stayed, or reversed on appeal or the Debtors shall file any motion to alter, amend, vacate, supplement, or modify this Order without the DIP Lender's prior consent, shall constitute an event of default under this Order, unless expressly waived in writing by the DIP Lender in accordance with the consents required in the DIP Loan Documents (individually and collectively, an "Event of Default").

19.     Rights and Remedies Upon Event of Default. Upon the occurrence and during the continuance of any Event of Default, the DIP Lender may declare the Debtors in default and stop making any additional credit available to the Debtors. Notwithstanding anything to the contrary herein, the DIP Lender shall provide the Debtors with written notice of an Event of Default, and the Debtors shall have ten (10) business days to cure such Event of Default. After the occurrence and during the continuance of an Event of Default, the DIP Lender may accept any payments from the Debtors without prejudice to the rights and remedies of the DIP Lender provided herein or in the DIP Loan Documents. After the expiration of the ten day cure period, the DIP Lender may seek relief from the automatic stay to enforce any or all of its rights, remedies, privileges, and benefits under the DIP Loan Documents including but not limited to the right to foreclose the DIP Liens on the DIP Collateral. Notwithstanding anything to the contrary herein; the DIP Lender shall not be entitled to exercise its rights with

respect to the DIP Collateral without a prior order of this Court and all of the DIP Lender's rights to exercise remedies hereunder are subject to the terms of this Order.

20. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order</u>. The DIP Lender has acted in good faith in connection with negotiating the DIP Loan Documents, extending credit under the DIP Facility, and its reliance on this Order is in good faith. Based on the findings set forth in this Order and the record made during the Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter reversed, modified, amended, or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby. Any liens or claims granted to the DIP Lender hereunder arising prior to the effective date of any such reversal, modification, amendment, or vacatur of this Order shall be governed in all respects by the original provisions of this Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, including the DIP Liens and priorities granted herein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation, or liability. All advances under the DIP Loan Documents are made in reliance upon this Order, and, therefore, the indebtedness resulting from such advances prior to the effective date of any stay, modification, or vacation of this Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or superpriority administrative claim status, or (iii) be deprived of the benefit of the status of the DIP Liens and DIP Superpriority Claims granted to DIP Lender under this Order or the DIP Loan Documents, as a result of any subsequent order in the Case or any Successor Case.

21. <u>Intentionally Deleted</u>.

22. <u>Reporting Requirements</u>. The Debtors shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Loan Documents. All reports shall be provided to DECD at the same time that such reports are provided to the DIP Lender.

23. <u>Carve Out</u>.

(a) *Carve Out.* As used in this Order, the "<u>Carve Out</u>" shall encompass and mean the following expenses (i) allowed fees and reimbursement for disbursements of professionals retained by the Debtors; (ii) allowed fees and reimbursement for disbursements of professionals retained by any statutory committee of unsecured creditors appointed in the Case in an aggregate amount not to exceed $50,000; and (iii) quarterly fees pursuant to 28 U.S.C. §1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court. The Post-Petition Liens granted pursuant to this Order shall all be subject and subordinate in lien, payment, and priority to the amounts payable by the Debtors on account of the Carve Out;

(b) *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.* The DIP Lender and DECD shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors and/or incurred in connection with the Case or any Successor Case.

24. <u>Limitations on the DIP Loan</u>. The DIP Loan proceeds may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Lender, its rights and remedies under the DIP Loan Documents, or this Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any statutory committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested

matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations and the DIP Liens, (iii) for monetary, injunctive or other affirmative relief against the DIP Lender, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Lender of any rights and/or remedies under this Order, the DIP Loan Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of, the Court or otherwise) by the DIP Lender upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in the Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required under the DIP Loan Documents; (d) objecting to, contesting, or interfering with in any way the DIP Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (e) using or seeking to use any insurance proceeds constituting DIP Collateral without the consents required under the DIP Loan Documents; (f) incurring Debt (as defined in the DIP Loan Documents ) outside the ordinary course of business without the prior consents required under the DIP Loan Documents; (g) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code.

25.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

26.    <u>No Deemed Control</u>. In making decisions to advance any extensions of credit under the DIP Loan, or in taking any other actions related to this Order or the DIP Loan Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Lender shall have no liability to any third party and shall not be deemed

to be in control of the operations of Debtors or to be acting as "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and the DIP Lender's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

27.   <u>No Marshaling/Applications of Proceeds</u>. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral, and all proceeds shall be received and applied pursuant to the DIP Loan Documents.

28.   <u>Intentionally Deleted.</u>

29.   <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Lender consents otherwise on or before the effective date of a confirmed plan of reorganization.

30.   <u>Rights Preserved</u>. Other than as expressly set forth in this Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender are preserved.

31.   <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Lender or DECD to seek relief or otherwise exercise rights and remedies under this Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Lender or DECD.

32.   <u>Binding Effect of Order</u>. Immediately upon entry by this Court

(notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order with respect to the Interim Financing only shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Lender, DECD, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Case, or upon dismissal of the Case or Successor Case. In no event shall the DIP Lender have any obligation to make advances to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of the Debtors.

33. <u>Intentionally Deleted.</u>

34. <u>Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Order, the provisions of this Order shall govern and control.

35. <u>Survival</u>. The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Case; (b) converting the Case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Case; or (d) pursuant to which this Court abstains from hearing the Case or Successor Case. The terms and provisions of this Order, including the claims, liens, security interests and other protections granted to the DIP Lender pursuant to this Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Case, or following dismissal of the Case or any Successor Case, and shall maintain their priority as provided by this Order until all DIP Obligations have been indefeasibly paid in full and all commitments to extend credit under the DIP Loan are terminated. The terms and provisions concerning the indemnification of the DIP Lender shall continue in the Case, in any Successor Case, following dismissal of the Case or any Successor Case, following termination of the DIP

Loan Documents and/or the repayment of the DIP Obligations.

36.     <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Order according to its terms.

37     <u>Final Hearing</u>. The final hearing to consider entry of the Final Order is scheduled for January 25th at 1:00 p.m. at the Hartford Bankruptcy Court, 450 Main Street, Hartford, CT.

38.     <u>Notice of the Final Hearing</u>. The Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Order and of the hearing on the Final Order, together with a copy of this Order on (a) the parties who were given notice of the interim hearing on the Motion, (b) any party who has filed a request for notice, and (c) counsel for any committee.  The notice of the hearing on the Final Order shall state that any party objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than January 21st at 5:00 p.m., which objections shall be served so as to be received on or before such date on: (a) counsel to the Debtors, (b) counsel to the DIP Lender, (c) counsel to DECD, (d) counsel to any committee, (e) the office of the United States Trustee, and (f) and all parties who have requested notice.

Dated at Hartford, Connecticut on January 5, 2016

*Ann M. Nevins*
United States Bankruptcy Judge
District of Connecticut

Exhibit A

**INTERIM BUDGET**

| Expense Categories 12/23/15-1/25/16 | Scheduled $'s |
|---|---|
| Content Production & Technical | $15,415.00 |
| General & Administrative | $4,679.26 |
| Payroll & Contractors | $22,634.62 |
| Payroll Taxes & Benefits | $4,945.00 |
| **Total Scheduled Cash Disbursements** | **$47,673.88** |