**Amended Loan and Security Agreement**

This Amended Loan and Security Agreement ("Agreement"), dated effective as of January __, 2016, is by and among GolfWorks LLC (the "Lender") and Back9Network, Inc., a Delaware corporation and Debtor-in-Possession under Chapter 11 of the United States Bankruptcy Code, and Swing by Swing Golf, Inc., a Delaware corporation and Debtor-in-Possession under Chapter 11 of the United States Bankruptcy Code, (collectively, the "Debtors").

**RECITALS**

1. On December 23, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Connecticut (the "Court"), jointly administered under Case No. 15-22192 (the "Chapter 11 Cases"). In accordance with Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are authorized to continue in possession of their properties and operate and manage their businesses as debtors-in-possession.

2. The Lender is a good-faith, third party lender and is willing to lend the Debtors the sum of up to $500,000.00 to provide the Debtors necessary funds required for working capital and other purposes, provided that the Debtors are able to obtain Court approval for a post-petition debtor-in-possession loan on terms acceptable to the Lender pursuant to Bankruptcy Code Sections 362 and 364 and Bankruptcy Rules 4001 and 9014: (i) authorizing the Debtors to obtain post-petition secured financing in accordance with the terms and conditions set forth in this Agreement and the documents executed or delivered in connection herewith (the "Loan Documents"); (ii) granting the Lender a post-petition super priority administrative expense claim and first priority security interest on the Collateral (as defined herein); (iii) lifting the automatic stay to allow the Lender to record and perfect certain Loan Documents; and (iv) granting related relief (hereinafter, the "Financing Order").

3. Subject to Court approval and entry of the Financing Order and subject to the terms and conditions set forth in this Agreement, the Lender is willing to make the loan described in this Agreement.

**Now therefore**, in consideration of the mutual terms and conditions set forth herein, the Debtors and the Lender agree as follows:

| 1. | **THE LOAN** |
|---|---|

**1.1  Loan Amount and Purpose.**  Subject to the terms and conditions set forth in this Agreement, the Lender agrees to advance to the Debtors a loan in the principal amount of up to FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "Loan"). The Loan will be disbursed, during the availability period described in Section 1.2, in

accordance with the procedures set forth in Section 1.2. The proceeds of the Loan will be used by the Debtors in accordance with the budget attached to the Financing Order as Exhibit A (the "Budget"). Any advance or disbursement of Loan proceeds under this facility that is made and repaid may not be reborrowed.

**1.2   Availability Period.**

(a)   The Loan is available in one or more disbursements during the period commencing after satisfaction (or waiver by Lender) of the conditions to the initial disbursement set forth in Section 4 of this Agreement and ending on the earlier of (i) the entry of an order confirming a Chapter 11 plan of reorganization or liquidation in the Chapter 11 Case, and (ii) April 30, 2016 (such date, the "Maturity Date").

(b)   The Debtors may request disbursements of the Loan by delivering to Lender a written borrowing request stating the amount of the Loan requested (a "Borrowing Request") two (2) business days prior to the date on which such disbursements are requested.  Each disbursement made hereunder shall be made to an account of the Debtors designated in the Borrowing Request.

**1.3   Interest.** The interest rate will be a fixed rate per year equal to 6.00% and will accrue on the full principal amount of the Loan advanced and outstanding from time to time hereunder.

**1.4   Repayment Terms.**  The Debtors will pay interest and principal in accordance with the terms of a promissory note in the form attached hereto as Exhibit A (the "Note").

**1.5   Prepayments.**  The Debtors may prepay the Loan in full or in part at any time during the term of the Note without the payment of a prepayment fee or premium.

**1.6   Application of Payments.**   Unless applicable law provides otherwise, all payments received by Lender from Debtors under the Loan shall be applied by Lender in the following order of priority: (i) amounts required to be payable for taxes and insurance by Debtors in connection with the Loan; (ii) late charges payable under the Note; (iii) interest payable on the Note; (iv) principal of the Note; (v) interest payable on protective advances made by Lender to cure a default; (vi) principal of protective advances made by Lender to cure a default; and (vii) any other sums secured by this Loan in such order as Lender, at Lender's option, may determine; provided, however, that Lender may, at Lender's option, apply any sums payable pursuant to any protective advances made by Lender prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this Section 1.6.

| **2.**   **COLLATERAL** |
|---|

**2.1   All Assets of the Debtors.**  All obligations of the Debtors under this Agreement

and the Note will be and hereby are secured by a first-priority senior security interest in all now existing and after-acquired assets of the Debtors, including, without limitation, all of their Accounts, Inventory, General Intangibles, Documents of Title, Other Collateral, Equipment, As-Extracted Collateral, Chattel Paper, Commercial Tort Claims, Consignments, Copyrights, Copyright licenses, Documents, Instruments, Investment Property, Letter-of-Credit Rights, Letters of Credit, Patents, Patent licenses, Payment Intangibles, Promissory Notes, Software, Supporting Obligations, Trademarks, Trademark licenses, Goods, Investment Property, Fixtures and Records, and to the extent not otherwise included, all Proceeds (including condemnation proceeds), all Accessions and additions thereto, and all substitutions and replacements therefor and products of any and all of the foregoing (the foregoing capitalized terms not defined herein shall have the meanings given to such terms in Article 9 of the Uniform Commercial Code as the same may be amended and in effect from time to time in the State of Connecticut) (collectively, the "Collateral").  The Lender shall be authorized to file all financing statements required to be filed in order to perfect, in favor of the Lender, a first priority security interest in the Collateral.

**2.2    Superpriority Nature of Claims and Lender's Liens.** All obligations of the Debtors under this Agreement and the Note will be further supplemented by superpriority claims against the Debtors as set forth in the Financing Order entered with respect to the Bankruptcy Case.

**3.    PAYMENTS AND COSTS**

**3.1    Disbursements and Payments.**

(a)    Each payment by the Debtors will be made in U.S. Dollars and immediately available funds, without setoff or counterclaim. Payments will be made by mail to the address shown on the Debtors' statement, or by such other method as may be permitted by the Lender.

(b)    Each disbursement by the Lender and each payment by the Debtors will be evidenced by records kept by the Lender.

**3.2    Banking Day.**  Unless otherwise provided in this Agreement, a banking day is a day other than a Saturday, Sunday or other day on which commercial banks are authorized to close, or are in fact closed, in the State of Connecticut.  All payments and disbursements which would be due on a day which is not a banking day will be due on the next banking day.  All payments received on a day which is not a banking day will be applied to the credit on the next banking day.

**3.3    Interest Calculation.**  Except as otherwise stated in this Agreement, all interest and fees, if any, will be computed on the basis of a 360-day year and the actual number of days elapsed.  Installments of principal which are not paid when due under this Agreement shall continue to bear interest until paid.

**3.4    Default Rate.**  Upon the occurrence and during the continuance of any Event of Default or after maturity or after judgment has been rendered on any obligation under this Agreement, all amounts outstanding under this Agreement, including any unpaid interest, fees, or costs, will at the option of the Lender bear interest at a rate which is 6.0 percentage point(s) higher than the rate of interest otherwise provided under this Agreement (such rate referred to as the "Default Rate").

**3.5    Origination Fee.**  The Debtors shall pay a two point origination fee to the Lender based on funds actually disbursed but only upon and after the entry of a final Financing Order.

**4.    CONDITIONS TO DISBURSEMENT**

The Lender will have no obligation to make disbursements of the Loan until all applicable conditions listed in this Section are satisfied.  The Lender, in its sole discretion, may waive one or more of these conditions without affecting its right to fully enforce such condition or conditions with respect to any subsequent request for a disbursement.

**4.1    First Disbursement on an Interim Basis.**  The first disbursement of the Loan was made in the amount of Fifty Thousand Dollars ($50,000) on an interim basis pursuant to the interim borrowing order of the Court: dated January __, 2016.

**4.2    Conditions to All Disbursements.**  All disbursements are subject to each of the following conditions:

(a)    Loan Documents.  Receipt by the Lender of the following documents and other items, executed and acknowledged as appropriate, all in form and substance satisfactory to the Lender:

    (i)    this Agreement.

    (ii)    a UCC-1 financing statement listing the Debtors as debtors and the Lender as secured party and covering all assets of the Debtors.

    (iii)    the Note.

    (iv)    Evidence of the insurance coverage required under this Agreement.

    (v)    Evidence that the execution, delivery and performance by the Debtors of this Agreement and any instrument or agreement required under this Agreement has been duly authorized.

    (vi)    The Court shall have entered the Financing Order in form and substance that is reasonably satisfactory to the Lender, which has not been reversed, stayed, modified or amended and as to which the time to

appeal or to seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

(vii) The Lender's receipt of the Budget in form and substance satisfactory to the Lender.

(b) Receipt by the Lender of a Borrowing Request.

(c) No more than the maximum principal amount of the Loan would be outstanding, after giving effect to such disbursements.

(d) There must not be any Event of Default under this Agreement or any of the Loan Documents.

(e) Entry of the Financing Order.

(f) The Debtors are in compliance with the Budget.

(g) Payment by the Debtors of the Lender's costs and expenses incurred in connection with this Agreement.

(h) The Lender determines in its sole and absolute discretion that the disbursement is in the Lender's interests.

**5.    REPRESENTATIONS AND WARRANTIES**

The Debtors promise that each representation and warranty set forth below is true, accurate and correct as of the date of this Agreement. Each draw request will be deemed to be a reaffirmation of each and every representation and warranty made by the Debtors in this Agreement.

**5.1    Formation; Authority.**  The Debtors have complied with all laws and regulations concerning their organizations, existence and the transaction of their businesses, and are in good standing in each state in which they conducts their businesses. The Debtors are authorized to execute, deliver and perform their obligations under this Agreement and any documents or agreements required hereunder.

**5.2    No Violation.**  The Debtors are not in violation of, and the terms of this Agreement do not conflict with, any regulation or ordinance, any order of any court or governmental entity, or any covenant or agreement affecting the Debtors. There are no claims, actions, proceedings or investigations pending or threatened against the Debtors, except for those previously disclosed by the Debtors to the Lender in writing.

**5.3     Good Standing.**  In each state in which the Debtors do business, they are properly licensed, in good standing, and, where required, in compliance with fictitious name statutes.

**5.4     Financial and Other Information.**  All financial and other information that has been or will be supplied to the Lender is sufficiently complete to give the Lender accurate knowledge of the Debtors' financial condition, including all material contingent liabilities.

**5.5     Litigation.**  There is no lawsuit, tax claim or other dispute pending or threatened against the Debtors which, if lost, would materially impair the Debtors' financial condition or ability to repay the Loan, except as have been disclosed in writing to the Lender.

**5.6     Insurance.**  The Debtors have obtained, and maintained in effect, the insurance coverage required in the "Covenants" section of this Agreement.

**5.7     Other Obligations.**  The Debtors are not in default on any material obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation, except as have been disclosed in writing to the Lender.

**5.8     Tax Matters.**  The Debtors have no knowledge of any pending assessments or adjustments of their income tax for any year and all taxes due have been paid, except as have been disclosed in writing to the Lender.

**5.9     No Event of Default.**  There is no event which is, or with notice or lapse of time or both would be, an Event of Default under this Agreement.

**5.10    Collateral.**  All Collateral is owned by the Debtors free of any title defects or any liens or interests of others, except those which have been approved by the Lender in writing or are otherwise expressly contemplated herein.

**5.11 ERISA Plans.**

(a)     Each Plan (other than a multiemployer plan) is in compliance in all material respects with ERISA, the Code and other federal or state law, including all applicable minimum funding standards and there have been no prohibited transactions with respect to any Plan (other than a multiemployer plan), which has resulted or could reasonably be expected to result in a material adverse effect.

(b)     With respect to any Plan subject to Title IV of ERISA:

(i)     No reportable event has occurred under Section 4043(c) of ERISA which requires notice.

(ii)    No action by the Debtors or any ERISA Affiliate to terminate or withdraw from any Plan has been taken and no notice of intent to terminate a Plan has been filed under Section 4041 or 4042 of ERISA.

(c)    The following terms have the meanings indicated for purposes of this Agreement:

(i)    "Code" means the Internal Revenue Code of 1986, as amended.

(ii)    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

(iii)    "ERISA Affiliate" means any trade or business (whether or not incorporated) under common control with the Debtors within the meaning of Section 414(b) or (c) of the Code.

(iv)    "Plan" means a plan within the meaning of Section 3(2) of ERISA maintained or contributed to by the Debtors or any ERISA Affiliate, including any multiemployer plan within the meaning of Section 4001(a)(3) of ERISA.

**5.12    Lien Priority and Survival of Liens and Claims.**

(a)    On and after the date of entry of the Financing Order and after giving effect thereto, the provisions of the Loan Documents and Financing Order are effective to create in favor of the Lender, legal, valid and perfected first priority liens on and security interests (pursuant to Sections 364(c)(2) and 364(d) of the Bankruptcy Code) in the Collateral, without the necessity of any party delivering, filing, registering or recording any other financing statements, filings, notices, recordings or other instruments or otherwise taking any other action to perfect such security interests or liens, subject only to the Carve-Out specified in the Financing Order.

(b)    On and after the entry of the Financing Order and after giving effect thereto, all obligations owing by the Debtors will be allowed administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code in the Chapter 11 Case having priority over all administrative expenses of the kind specified in sections 503 and 507 of the Bankruptcy Code and any and all expenses and claims of the Debtors, whether heretofore or hereafter incurred, including, but not limited to, the kind specified in sections 105, 326, 328, 506(c), 507(a) or 1114 of the Bankruptcy Code, subject only to the Carve-Out specified in the Financing Order.

(c)    The Debtors agree that the obligations hereunder and under the other Loan Documents, including the Note, shall not be discharged by (i) the entry of an order confirming a Chapter 11 plan of reorganization or liquidation in the Chapter 11 Case (and the Debtors, pursuant to section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge), (ii) the conversion of the Chapter 11 Case to a chapter 7

case, or (iii) the dismissal of the Chapter 11 Case. The Debtors agree that the lien and super-priority administrative expense claim granted to the Lender pursuant to the Order shall not be affected in any manner by the entry of an order confirming a Chapter 11 plan of reorganization or liquidation in the Chapter 11 Case.

### 6.    COVENANTS OF DEBTOR

The Debtors agree, so long as the Loan is available under this Agreement and until the Lender is repaid in full:

**6.1    Use of Proceeds.**  To use the Loan proceeds for the purposes described in Section 1.1 of this Agreement.

**6.2    Performance of Acts.**  Upon request by the Lender, to perform all acts which may be reasonably necessary or advisable to perfect any lien or security interest provided for in this Agreement or to carry out the intent of this Agreement and the Financing Order.

**6.3    Compliance with Law.**  To comply with all existing and future laws, regulations, orders, and requirements of, and all agreements with and commitments to, all governmental, judicial and legal authorities having jurisdiction over the Debtors or their businesses or Collateral.

**6.4    Permits, Licenses and Approvals.**  To properly obtain, comply with and keep in effect all permits, licenses and approvals which are required to be obtained from governmental bodies in order to operate their businesses.  The Debtors will promptly deliver copies of all such permits, licenses and approvals to the Lender.

**6.5    Financial Information.**  To provide financial statements and other information in form and content acceptable to the Lender relating to the affairs of the Debtors as requested by the Lender from time to time.

**6.6    Insurance.**

    (a)    To maintain the following insurance:

        (i)    Comprehensive general liability coverage with such limits as the Lender reasonably may require.  This policy will include an additional insured endorsement in favor of Lender. Coverage will be written on an occurrence basis, not claims made.

        (ii)    Workers' compensation insurance for all employees of the Debtors in such amount as is required by law.

        (iii)    Such other insurance as the Lender in its reasonable judgment may require to comply with the Lender's regular requirements and practices in

similar transactions, which may include windstorm, hurricane, and earthquake insurance, and insurance covering acts of terrorism.

(b) All policies of insurance required by the Lender must be issued by companies approved by the Lender and otherwise be acceptable to the Lender as to amounts, forms, risk coverages and deductibles. Upon the request of the Lender, the Debtors will deliver to the Lender a copy of each insurance policy, or, if permitted by the Lender, a certificate of insurance listing all insurance in force.

(c) If the Debtors fail to keep any such coverage in effect while the Loan is outstanding, the Lender may procure the coverage at the Debtors' expense. The Debtors will reimburse Lender, on demand, for all premiums paid by the Lender, which amounts may be added to the principal balance of the Loan and shall bear interest at the default rate provided in this Agreement.

**6.7    Notices.**  To promptly notify the Lender in writing of:

(a) Any litigation affecting the Debtors.

(b) Any notice or communication that the Debtors fail in any material respect to comply with any applicable law, regulation or court order.

(c) Any substantial dispute between the Debtors and any government authority.

(d) Any material adverse change in the Debtors' financial condition or operations or other circumstance that adversely affects the Debtors' ability to repay the Loan.

(e) Any default under this Agreement, or any event which, with notice or lapse of time or both, would constitute an Event of Default.

(f) Any change in the Debtors' names, legal structures, states of incorporation, places of business, or chief executive offices if the Debtors have more than one place of business.

**6.8    Books and Records.**  To maintain adequate books and records and allow the Lender and its agents to examine, audit and make copies of books and records at any reasonable time. If any of the Debtors' books or records are in the possession of a third party, the Debtors authorize that third party to permit the Lender or its agents to have access to perform examinations or audits and to respond to the Lender's requests for information concerning such books and records.

**6.9    Other Liens.**  Not to create, assume, or allow any security interest or lien (including judicial liens) on the Collateral except:

(a) Liens and security interests in favor of the Lender established by and contemplated by the Financing Order.

(b) Liens for current taxes, assessments or other governmental charges which are not delinquent or remain payable without any penalty.

(c) Liens outstanding on the date of this Agreement.

**6.10  Inspection of Collateral.**  To allow the Lender, its agents and representatives to enter and visit the Debtors' business location at any reasonable time, upon reasonable prior notice, for the purposes of inspecting the Collateral.

## 7. DEFAULT AND REMEDIES

**7.1  Events of Default.**  The Debtors will be in default under this Agreement upon the occurrence of any one or more of the following (each an "Event of Default"):

(a) <u>Failure to Pay</u>.  The Debtors fail to make a payment under this Agreement or the Note when due, after giving effect to any applicable cure period.

(b) <u>Cross-default</u>.  Any event of default occurs, after giving effect to any applicable cure period, under the Note or the other Loan Documents or the Financing Order.

(c) <u>False Information</u>.  The Debtors have given the Lender false or misleading information or representations.

(d) <u>Chapter 11 Case</u>.

(i) The Chapter 11 Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; a trustee or interim trustee under chapter 7 or chapter 11 of the Bankruptcy Code, a receiver and manager, or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106(b) of the Bankruptcy Code is appointed in the Chapter 11 Case; or an application is filed by the Debtors for the approval of any superpriority claim or lien (other than the Carve-Out in the Financing Order) in the Chapter 11 Case which is pari passu with or senior to the claims or liens of the Lender hereunder or under the Financing Order.

(ii) The Debtors fail to comply with any term of the Financing Order or the occurrence of an event of default thereunder.

(iii) The Financing Order is reversed, stayed for a period in excess of fourteen (14) days, vacated or rescinded; or (ii) amended, supplemented or otherwise modified without the written consent of the Lender.

  (iv) The Debtors shall seek to, or shall support (in any such case by way of any motion or other pleading filed with the Court or any other writing to another party-in-interest executed by or on behalf of the Debtors), any other person's motion, to disallow in whole or in part the Lender's claim in respect of the obligations or to challenge the validity, perfection, priority, non-avoidability or enforceability of the liens in favor of the Lender.

(f) <u>Receivers</u>. A receiver or similar official is appointed for any portion of the Debtors' assets.

(g) <u>Lien Priority</u>. The Lender fails to have a valid and enforceable first priority perfected security interest in or lien on the Collateral or any other collateral securing the Debtors' obligations under this Agreement, the Loan Documents and or the Financing Order.

(h) <u>Material Adverse Change</u>. A material adverse change occurs, or is reasonably likely to occur, in the Debtors' business condition (financial or otherwise), operations, properties or prospects, or ability to repay the Loan excluding any change related to the pending Chapter 11 Case.

(i) <u>Government Action</u>. Any government authority takes action that the Lender believes materially adversely affects the Debtors' financial condition or ability to repay the Loan.

(j) <u>Default under Related Documents</u>. Any default occurs under the Note, any security agreement or other document required by or delivered in connection with this Agreement or any such document is no longer in effect.

(k) <u>Other Breach Under Agreement</u>. A default occurs, after giving effect to any applicable cure period, under any other material term or condition of this Agreement not specifically referred to in this Article.

**7.2 Remedies.**

  (a) Upon the occurrence and during the continuance of any Event of Default, the Lender may do one or more of the following without prior notice: declare the Debtors in default, stop making any additional credit available to the Debtors, and require the Debtors to repay their entire debt immediately. In addition, upon the occurrence and during the continuance of any Event of Default, the Lender shall have all rights, powers and remedies available under any instruments and agreements required by or executed in connection with this Agreement, the Loan Documents and the Financing Order, as well as all rights and remedies available at law or in equity. Notwithstanding anything to the contrary herein, the Lender shall provide the Debtors with written notice of an existing default or Event of Default, and Borrower shall have a ten (10) business day opportunity from the date such notice is received to cure a default or Event of Default

prior to the Lender accelerating the balance due or taking any other remedies available to the Lender.  After the occurrence and during the continuance of an Event of Default, the Lender may accept any payments from the Debtors without prejudice to the rights and remedies of the Lender provided herein or in the DIP Loan Documents and may seek relief from the automatic stay to enforce any or all of its rights, remedies, privileges, and benefits under the DIP Loan Documents including but not limited to the right to foreclose the DIP Liens on the DIP Collateral. In connection with any such motion, the Debtors agree shall not oppose any motion seeking an expedited hearing.

(b)    All of the Lender's rights to exercise remedies hereunder are subject to the terms of the Financing Order.

## 8.    ENFORCING THIS AGREEMENT; MISCELLANEOUS

**8.1    Governing Law.**  Except to the extent that any law of the United States may apply, this Agreement shall be governed and interpreted according to the laws of the State of Connecticut (the "Governing Law State"), without regard to any choice of law, rules or principles to the contrary.  Nothing in this paragraph shall be construed to limit or otherwise affect any rights or remedies of the Lender under federal law.

**8.2    Venue and Jurisdiction.**  The Debtors agree that any action or suit against the Lender arising out of or relating to this Agreement shall be filed in federal court or state court located in the Governing Law State. The Debtors agree that the Lender shall not be deemed to have waived its rights to enforce this section by filing an action or suit against the Debtors in a venue outside of the Governing Law State.  If the Lender does commence an action or suit arising out of or relating to this Agreement, the Debtors agree that the case may be filed in federal court or state court in the Governing Law State.  The Lender reserves the right to commence an action or suit in any other jurisdiction where the Debtors or any Collateral have any presence or is located.  The Debtors consent to personal jurisdiction and venue in such forum selected by the Lender and waives any right to contest jurisdiction and venue and the convenience of any such forum. The provisions of this section are material inducements to the Lender's acceptance of this Agreement. Notwithstanding the foregoing, Lender acknowledges that it may not take any action against the Debtors or their assets without prior Bankruptcy Court approval.

**8.3    Successors and Assigns.**  This Agreement is binding on the Debtors' and the Lender's successors and assignees.  The Debtors agree that it may not assign this Agreement without the Lender's prior consent.

**8.4    Waiver of Jury Trial.  EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION HEREWITH OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY**

**(WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (a) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (b) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER DOCUMENTS CONTEMPLATED HEREBY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION AND (c) CERTIFIES THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE.**

**8.5    Severability; Waivers.**  If any part of this Agreement is not enforceable, the rest of the Agreement may be enforced.  The Lender retains all rights, even if it makes a loan after an Event of Default.  If the Lender waives a default or Event of Default, it may enforce a later default or Event of Default.  Any consent or waiver under this Agreement must be in writing.

**8.6    Expenses.**

(a)    The Debtors shall pay to the Lender immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees, expended or incurred by the Lender in connection with (i) the negotiation and preparation of this Agreement and any related agreements, the Lender's continued administration of this Agreement and such related agreements, and the preparation of any amendments and waivers related to this Agreement or such related agreements, (ii) filing, recording and search fees, and other fees with respect to the Collateral, (iii) the Lender's costs or losses arising from any changes in law which are allocated to this Agreement or any credit outstanding under this Agreement, and (iv) reasonable costs or expenses required to be paid by the Debtors that are paid, incurred or advanced by the Lender.

(b)    The Debtors shall indemnify and hold harmless the Lender and its respective shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the Loan Documents, or the transactions contemplated thereby and by the Financing Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the Loan Documents and as further described therein and herein, except to the extent resulting from such indemnified party's negligence, misconduct, breach of law, bad faith or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for the Lender's exercise of discretionary rights granted under the Loan. In all such litigation, or the preparation therefor, the Lender shall be entitled to

select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

(c)    The Debtors shall reimburse the Lender for any reasonable costs and attorneys' fees incurred by the Lender in connection with (i) the enforcement or preservation of the Lender's rights and remedies and/or the collection of any obligations of the Debtors which become due to the Lender and in connection with any "workout" or restructuring, and (ii) the prosecution or defense of any action in any way related to this Agreement or the Loan Documents.

**8.7    One Agreement.**  This Agreement and the Loan Documents collectively: (a) represent the sum of the understandings and agreements between the Lender and the Debtors concerning the Loan; (b) replace any prior oral or written agreements between the Lender and the Debtors concerning the Loan; and (c) are intended by the Lender and the Debtors as the final, complete and exclusive statement of the terms agreed to by them.  In the event of any conflict between this Agreement and any other agreements required by this Agreement, this Agreement will prevail.

**8.8    Notices.**  Unless otherwise provided in this Agreement or in another agreement between the Lender and the Debtors, all notices required under this Agreement shall be personally delivered or sent by first class mail, postage prepaid, or by overnight courier, to the addresses on the signature page of this Agreement, or to such other addresses as the Lender and the Debtors may specify from time to time in writing.  Notices and other communications shall be effective (i) if mailed, upon the earlier of receipt or five (5) days after deposit in the U.S. mail, first class, postage prepaid, or (ii) if hand-delivered, by courier or otherwise (including telegram, lettergram or mailgram), when delivered.

**8.9    Headings.**  Article and paragraph headings are for reference only and shall not affect the interpretation or meaning of any provisions of this Agreement.

**8.10    Counterparts.**  This Agreement may be executed in as many counterparts as necessary or convenient, and by the different parties on separate counterparts each of which, when so executed, shall be deemed an original but all such counterparts shall constitute but one and the same agreement.  Delivery of an executed counterpart of this Agreement (or of any agreement or document required by this Agreement and any amendment to this Agreement) by telecopy or other electronic imaging means shall be as effective as delivery of a manually executed counterpart of this Agreement; provided, however, that the telecopy or other electronic image shall be promptly followed by an original if required by the Lender.

**8.11    Financing Order**.  The terms and conditions hereunder and under the Loan Documents shall be subject to the terms and conditions of the Financing Order. In the event of any inconsistency between the terms or conditions of this Agreement (or any Loan Document) and the terms and conditions of the Financing Order, the terms and conditions of the Financing Order shall control.

**8.12  Limitation of Interest and Other Charges**.  If, at any time, the rate of interest, together with all amounts which constitute interest and which are reserved, charged or taken by the Lender as compensation for fees, services or expenses incidental to the making, negotiating or collection of the loan evidenced hereby, shall be deemed by any competent court of law, governmental agency or tribunal to exceed the maximum rate of interest permitted to be charged by the Lender to the Debtors under applicable law, then, during such time as such rate of interest would be deemed excessive, that portion of each sum paid attributable to that portion of such interest rate that exceeds the maximum rate of interest so permitted shall be deemed a voluntary prepayment of principal.  As used herein, the term "applicable law" shall mean the law in effect as of the date hereof; provided, however, that in the event there is a change in the law which results in a higher permissible rate of interest, then this Agreement shall be governed by such new law as of its effective date.

**8.13  Conversion of DIP Loan.**  The Lender is prepared to convert the entire balance of the Loan into a post-confirmation loan to the Debtors that is *pari passu* with the Debtors' pre-petition loan to the DECD in exchange for a majority interest in the reorganized Debtors on terms and conditions satisfactory to the Lender in its sole and absolute discretion.

**[Signatures to Appear on the Following Page]**

The Debtors executed this Agreement as of the date stated at the top of the first page, intending to create an instrument executed under seal.

| DEBTOR: | LENDER: |
|---|---|
| Back9Network Inc. | Golf Works LLC |
| By_____ | By_____ |
| Typed Name_____ | Typed Name_____ |
| Title_____ | Title_____ |

Swing by Swing Golf, Inc.

By_____
Typed Name_____
Title_____

**EXHIBIT A**

# PROMISSORY NOTE

[attached]